HEANEY, Circuit Judge, dissenting.
I agree that Lauren Strawn was denied the free appropriate public education promised her under the Individuals with Disabilities Act (IDEA), and that the district court clearly erred by concluding otherwise. However, because the two-year statute of limitations for the Missouri Human Rights Act (MHRA), see Mo.Ann.Stat. § 213.111 (West Supp.2000), frustrates the policy embodied in the IDEA, it cannot be borrowed. Furthermore, even if the two-year limitations period was properly borrowed, Lauren’s claim is timely, and she is entitled to the 1836 hours of compensatory education awarded her by the administrative panel.
If the MHRA is the most closely analogous state statute, our court may borrow its statute of limitations only if doing so would not frustrate the policy embodied in the IDEA. See Aaron v. Brown Group, Inc., 80 F.3d 1220, 1223 (8th Cir.1996). The IDEA mandates that all disabled children have the opportunity to receive a free appropriate public education, and that the child’s rights and those of his/her parents are protected. See 20 U.S.C. § 1400(d)(1) (1999). Further, the statute encourages parents and school officials to resolve disputes over the disabled child’s education, so that the child is not needlessly deprived of the education mandated by law. See Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1193-94 (1st Cir.1994). Both of these policies are frustrated by a two-year limitations period.
First, the two-year statute of limitations discourages parents from working with school officials to resolve their differences. Parents in these cases are required to interact with school officials. A school committee drafts an Individual Education Plan (IEP) for their child describing how the child’s educational needs will be met during the academic year. If the parents disagree with the IEP, they voice concerns and try to reconcile their differences with school officials. Because a two-year limitations period forecloses the option of compensatory education for any lengthier period, parents will be discouraged from working with school officials to determine the best method of education for their child. Instead of encouraging discourse, the limitations period will require parents to maintain an adversarial posture with school officials and to institute litigation before all efforts to negotiate the matter have been completed.
Second, a two-year statute of limitations will most harm disabled children who have been deprived of an appropriate education for a period extending beyond the two years. For example, in this case, the ad *960 ministrative panel found that Lauren was deprived a free appropriate public education for nine years, and that she required the equivalent of 1836 hours of compensatory education. The two-year limitations period, as pointed out by the majority, only compensates Lauren for the education she was deprived during the 1993-94 academic year, just one of the nine years. Thus, the two-year limitations period will effectively prevent many disabled children, like Lauren, from ultimately receiving their statutorily-guaranteed education.
Our court should instead borrow Missouri’s five-year “catch-all” statute of limitations for personal actions, see Mo.Ann. Stat. § 516.120(4) (West Supp.2000), because it better serves the policy goals of the IDEA. A five-year limitations period encourages parents to work with .school officials to determine the best education plan for their disabled child. It does not punish the child when the parents attempt to resolve their differences with school officials, and it ensures, as is central to the IDEA, that the child ultimately receives a free appropriate public education. Because borrowing the MHRA’s two-year statute of limitations frustrates the IDEA’S policies, Missouri’s five year catchall statute of limitations is the more appropriate.
Regardless whether a two or five-year limitations period applies, Lauren’s claim is timely. Under both the MHRA and Missouri’s catch-all statute, the limitations period begins to run when the damage is sustained and objectively capable of ascertainment. See Heilman v. American Family Mut. Ins. Co., 931 F.Supp. 658, 660 (W.D.Mo.1996) (“The statute of limitations period for purposes of Title VII and the MHRA begins to run on the date that the allegedly discriminatory act took place and the plaintiff was aware of the action.”); Klemme v. Best, 941 S.W.2d 493, 497 (Mo.1997) (en banc) (“Section 516.120(4)’s limitation begins to run when damage is sustained and objectively capable of ascertainment.”).
Under the IDEA, parents must be given prior written notice whenever the state educational agency refuses to initiate or change the child’s educational placement. See § 1415(b)(3)(B). Such notice must, among other things, explain the action, describe other options considered by the agency and inform the parents that procedural safeguards are in place to protect them, see § 1415(c), one of which is the right to request a due process hearing to appeal the action, see § 1415(d)(2)(J).
Prior to January 1994, Lauren was placed in the Missouri State Schools for the Severely Handicapped (SSSH). Each year, Lauren’s parents (“the Crawfords”) were shown her IEP. They voiced concern that Lauren was not receiving sufficient communication skills training, and attempted to work with school officials to remedy the situation.
In addition to working with school officials, the Crawfords sought Lauren’s admission to the Missouri School for the Deaf (MSD) six times between 1985 and 1993. Although Lauren was refused admission each time, MSD never notified the Crawfords, nor did it convey the procedural safeguards in place through which they could appeal the decision, both of which are required by the IDEA. The administrative panel found that:
MSD never provided procedural safeguards of its refusal to admit Lauren as required by law.... It appears to the panel as though MSD is attempting to hand off its responsibility to Lauren to SSSH. The panel does not find this position is founded in law. The MSD should have notified the family of its placement recommendations. It is clear that the SSSH did not have the ability to cause the MSD to accept Lauren so that an appeal to SSSH alone would have been futile. The parents then had no effective method of appeal available to them during the years that MSD rejected Lauren, between 198k and until Lauren’s eventual acceptance in January 199k. *961 MSD never notified the parents of the opportunity to appeal its repeated rejections and as aforementioned ... SSSH had no power to affect this determination.
(App. at 54-55 (emphasis added).)
In addition to not being informed of their right to appeal MSD’s decision, the Crawfords did not learn that Lauren’s education at SSSH was inadequate until November 1993 when Lauren’s special education teacher, Barbara Friskey, prepared her progress report. In the report, Fris-key recognized great improvement in every area because Lauren was receiving signing services. Friskey stated, “Lauren has been in my class for the past one and a half years. During that time we have seen much progress in every area. Much of Lauren’s sudden improvement we have attributed to the fact that this is the first time Lauren has had a signing teacher.” (Id. at 51.)
Because MSD failed to notify the Craw-fords of its refusal to admit Lauren and of their right to seek a due process hearing, the limitations period on Lauren’s claim began to run when the damage was objectively capable of ascertainment. The inadequacy of Lauren’s education was not ascertainable until Barbara Friskey issued her progress report in November 1993. The Crawfords sought a due process hearing on this matter on July 28, 1995, less than two years later. Because the Craw-fords requested a due process hearing within two years of receiving the report, Lauren’s claim is not time-barred under either the MHRA or Missouri’s catch-all statute of limitations. Accordingly, she is entitled to the full 1836 hours of compensatory education awarded her by the administrative panel.
For this reasons, I respectfully concur in part and dissent in part.